UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

WYOMA IVY, as Mother and Administratrix )
of the Estate of MICHAEL STEVEN YOUNG )
JR., Deceased )
)
)
**Plaintiff** )
)
TIMOTHY MORRIS: MARSHAL TURNER: ) Civil Action No.4:20cv173-DMB-JMV
CENTURION of MISSISSIPPI, LLC; DR. JUAN )
SANTOS; NURSE BRENDA BROWN; NURSE )
VICKIE L. THOMAS; NURSE FE JUVELYN IBE; )
NURSE ANTONIO DEL CASTILLO; NURSE ANGELA )
WOMACK; NURSE TANISHA SIMMONS; )
NURSE CYNTHIA CURTIS; NURSE DAVLICIA )
LOVE; NURSE JUANITA THOMAS; Medical )
Staff JOHN or JANE DOES 1-15, all in their )
individual and official capacities representing )
Centurion of Mississippi, LLC; Correctional )
Officers, JOHN or JANE DOES 1-15, all in )
their individual and official capacities )
representing prison guards of the )
Mississippi State Penitentiary, and/or other )
employees, including supervisory officials )
whose identities are currently unknown. )

**Defendants**

## PLAINTIFFS' FIRST AMENDED COMPLAINT
### (JURY TRIAL DEMANDED)

**COMES NOW** the Plaintiff, by and through counsel, and submits this her first amended complaint and for cause of action against Defendants would respectfully show unto this Honorable Court the following facts and matter, to-wit:

### I. INTRODUCTION

1. Wyoma Ivy, as Mother and Administratrix of the Estate of her son, Michael

1

Steven Young, Jr. ("Mr. Young"), deceased, complains of the egregious and unjustifiable treatment of her son by the Defendants named in the caption above. As more specifically set forth below, Mr. Young, during his incarceration at the Mississippi State Penitentiary in Parchman, Mississippi, was subjected to Defendants' deliberate indifference to his obvious serious medical needs, and as a consequence, suffered severe pain and died in agony on October 9, 2017. It is the purpose of this action to recover the actual damages Mr. Young, his Mother, Heirs and his Estate sustained as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. JURSIDICTION AND VENUE

2. Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C Sec. 1983, and 28 U.S.C. Section 1343 *et seq* for gross and unconscionable violations of the rights, privileges and immunities guaranteed Mr. Young by the Fourth, Eighth, Tenth and Fourteenth Amendments to the Constitution of the United States. Each count and allegation herein is made under each of those provisions. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 38 U.S.C. Sec. 1441 and 1343. Pursuant to U.S.C. Section 1391, Sunflower County, Mississippi is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. PARTIES

3. Plaintiff, Wyoma Ivy, is an adult resident citizen of Lee County, Mississippi and is the Mother of the Deceased, Michael Steven Young, Jr. Wyoma Ivy brings this suit in her individual capacity and in a representative capacity on behalf of all heirs at law of Michael Steven Young, Jr., deceased. Further she brings this suit as the Adminstratrix of the

Estate of Michael Steven Young, Jr.

4. Defendant, Timothy Morris, is an adult resident citizen of the State of Mississippi, employed as Superintendent of the State Penitentiary, and he may be served with process at his place of employment, at Highway 49 West, Parchman, Mississippi 38738 or 590 Parchman Road 12, Parchman, Mississippi 38783.

5. Defendant, Marshal Turner. is an adult resident citizen of the State of Mississippi, employed as Superintendent of the Mississippi State Penitentiary at the time of the events detailed herein, and he may be served with process at his previous place of employment, at Highway 49 West, Parchman, Mississippi 38738 or 590 Parchman Road 12, Parchman, Mississippi 38738, or wherever he may be found.

6. Defendant, Centurion of Mississippi LLC, is a domestic corporation registered to do business in the State of Mississippi, and may be served process by service on its registered agent, C.T Corporation System, 655 Lakeland Drive East, Suite 1010, Flowood, Mississippi 39232.

7. Dr. Juan M. Santos, was the physician assigned to work at the MSP Parchman prison by Defendant Centurion, and who was directly responsible for the operation and activities of the prison hospital as to Mr. Young, and may be served process by service on the registered agent of Centurion of Mississippi, LLC or wherever he may be found.

8. Defendant Nurses Brenda Brown, Vickie L. Thomas, Fe Juvelyn Ibe, Antonio Del Castillo, Angela Womack, Tanisha Simmons, Cynthia Curtis, DavLicia Love, Juanita Thomas are with the medical staff of Centurion. Each of these Defendants was aware of the circumstances noted herein and allowed Mr. Young to suffer and die without diagnosis or

3

treatment. They may be served with process by service on the registered agent of Centurion of Mississippi, LLC or where they may be found.

9. Defendant medical staff included medical staff John or Jane Does 1-15, who are adult resident citizens of the State of Mississippi, employed by Defendant Centurion at the Mississippi State Penitentiary Parchman prison during the times of the occurrences noted herein. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Medical Staff John or Jane Does 1-15, inclusive, and therefore sues these Defendants by such fictitious names and capacities. Plaintiffs will amend this complaint to allege the true names and capacities of these Medical Staff John or Jane Does when ascertained. Plaintiffs are informed and believe and on that basis, alleges that each fictitiously-named Defendant is responsible in some manner for the occurrences herein alleged, and the Plaintiffs' injuries and/or damages were proximately caused by the conduct of each Defendant. These persons and/or entities include, but are not limited to, employees, agents and servants of the State of Mississippi. Any and all personnel who are liable to Plaintiffs for the actions and/or inactions complained of herein.

10. Defendant Correctional Officers John or Jane Does 1-15, are adult resident citizens of the State of Mississippi, employed by Mississippi State Penitentiary, and they may be served with process at their place of employment, Mississippi State Penitentiary, located at Highway 49 West, Parchman, MS 38738 or 590 Parchman Road 12, Parchman, MS. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as John or Jane Does 1-15, inclusive, and therefore sues these Defendants by such fictitious names and capacities. Plaintiff will amend this complaint to allege the true names and capacities of

these John or Jane Does when ascertained. Plaintiffs are informed and believe and on that basis, allege that each fictitiously-named Defendant is responsible in some manner for the occurrences herein alleged, and the Plaintiff's injuries and/or damages were proximately caused by the conduct of each Defendant. These persons and/or entities include, but are not limited to, employees, agents and servants of the State of Mississippi. Any and all personal who are liable to Plaintiff for the actions and/or inactions complained of herein.

## IV. FACTS

11. Michael Steven Young, Jr. was incarcerated at Mississippi State Penitentiary ["Parchman" or "MSP"], Unit 29, Building H, Zone B, at the time of his untimely death on October 9, 2017, at the age of 36. The Report of Postmortem Examination, dated January 31, 2019, signed by J. Davis, M.D., State Medical Examiner, gives the cause of death as complications of small bowel volvulus, *i.e.*, an obstructed intestine due to knotting or twisting, involving but not limited to extensive bleeding and tissue necrosis, corruption and failure of the kidneys, and pneumonia, apparently caused by extensive inhalation of the blood and bile which Mr. Young vomited up on many occasions and for at least five (5) days before he died, as documented by the Defendants.

12. Further, the Report states that Mr. Young had a reported history of abdominal pain and vomiting, and became unresponsive while being transported to another hospital. Defendants' records document that Mr. Young died before he even got to an ambulance, and that his purported emergency transport to another hospital was deliberately delayed by Defendant medical staff for more than an hour.

13. On or before October 4, 2017, Mr. Young began experiencing and

complaining of stomach pain, light-headiness, nausea and vomiting of blood and bile. As he told Defendant medical staff as soon as he was able and allowed to, he began coughing up and vomiting blood no later than October 4, 2017. Mr. Young and his cellmate attempted to obtain medical attention for Mr. Young by notifying the medical staff personnel who routinely walked through cell blocks. Their desperate pleas for help for Mr. Young were ignored by those Defendants.

14. On October 5, 2017, Mr. Young submitted a document to a Defendant guard[s], an "SCR" form, requesting immediate medical attention. The form stated: "Someone in the kitchen poisoned my food." Such requests for medical attention must be submitted to the guards. The Defendant guard[s], aware that Mr. Young was in considerable pain and in obvious need of immediate medical attention, decided to **not** promptly forward the request for urgent medical attention to the prison medical staff, but, rather, to not transmit the request, so that Mr. Young would continue to suffer.

15. On or before October 5, 2017, Mr. Young's cellmate, Jamarcus Glover, repeatedly and consistently screamed for help for Mr. Young, and made efforts to attract the attention of guards Davis and/or Garnell and/or other guards by banging with his cup. Other prisoners made similar efforts. Defendant guards decided to ignore what they were aware were attempts to obtain critical medical attention for the obviously ill and suffering Mr. Young, so that Mr. Young would continue to suffer.

16. The next day, October 6, 2017, during shower call, Defendant guard Bryan opened Jamarcus Glover and Mr. Young's cell, # 15, and Jamarcus Glover told Officer Bryan about Mr. Young's critical medical condition. Both prisoners asked Officer Bryan,

6

who observed Mr. Young in obvious pain and distress, for medical assistance for Mr. Young. Defendant Bryan willfully ignored both men's pleas for medical assistance, so that Mr. Young would continue to suffer. Another inmate informed Officers Price and Johnson that Mr. Young needed immediate medical attention as well. Officer Price replied, "There isn't a Doctor in, he'll be alright," and both guards walked away without making any effort to obtain obviously critically necessary medical attention for Mr. Young, with the purpose and intent that Mr. Young continue to suffer. Another officer was overheard saying to Mr. Young that he "ain't calling nobody," demonstrating his and the other guards' decision to prolong Mr. Young's suffering and deny him obviously essential and critical medical treatment. Due to the obvious and apparent urgency of Mr. Young's medical needs, on October 5-7, pleas to obtain medical attention for Mr. Young were repeatedly made to guards by numerous prisoners from 29 K Building, B Zone. All such pleas were ignored by Defendant guards, who, despite their awareness of the extreme pain suffered by Mr. Young and the critical need for medical treatment, decided to have Mr. Young suffer rather than have a chance at treatment.

17. All of the actions and inactions of guards, prison officials and medical staff such as nurses and doctors noted herein were done with malicious and wanton intent, and with the intent and understanding that those actions and inactions would cause Mr. Young's suffering to increase and be prolonged, and that he would likely die as a result. All of the actions and inactions of guards, prison officials and medical staff such as nurses and doctors noted herein were done with deliberate indifference to Mr. Young's suffering and dire medical condition.

18. The following correctional officers, at least, were present during and/or aware

7

of the pleas for medical assistance: Bryan, Grimes, Johnson, Price, Hall, Lacey, Davis, Garnell, Westmore, Lt. Anderson, and Lt. Alexander.

19. Plaintiff, Wyoma Ivy, is Mr. Young's mother. On October 5, 2017, Mr. Young called her and asked her to call the medical department at the Parchman prison to report his urgent need for medical assistance. At that time, Mr. Young told her, 'Momma, I've been trying to get help from medical because of so much pain but they haven't come to see me'. Mr. Young informed her that he had sent a written request for immediate medical attention to the medical staff, but that his request had thus far been ignored by the medical staff. As noted herein, the Defendant guards had in fact decided and undertaken to not forward Mr. Young's written request for immediate medical attention to the prison's medical staff in a timely manner, nor to otherwise notify the prison's medical staff that a prisoner was seriously ill, in considerable pain and obviously needed immediate medical attention.

20. On October 5, 2017, Plaintiff called the medical department at the Mississippi State Penitentiary in Parchman and reported that her son, Mr. Young, a prisoner, needed immediate medical attention. She also related to the medical staff that Mr. Young had filed a written request for medical as well. She also informed the medical staff, on this occasion and the other such occasions noted herein, that Mr. Young had suffered a bowel blockage years ago which had required surgery. The symptoms/pain Mr. Young was experiencing were very similar to those he had previously suffered. At the time of the earlier blockage, Mr. Young required and received immediate medical care and recovered completely, although due to the inherent criticality of such a condition, that recovery was lengthy.

8

21. After providing a medical staff member with Mr. Young's information and location, Plaintiff requested that the medical staff call her and let her know how he was doing. No one from MDOC called her back. The medical staff, including Dr. Santos and Defendant nurses, understanding that Mr. Young was in great pain and that he desperately needed medical attention and that his life and health were in great danger, decided to have Mr. Young continue to suffer and very likely die without medical intervention.

22. On October 6, 2017, Mr. Young again called Plaintiff. He told her that the medical department had still not responded to his written request for medical help. He expressed that his pain had become even more severe. He reported that he was unable to sleep or keep food or drink down. Plaintiff could hear his pain in his voice. That would be the last conversation Plaintiff would have with her only son.

23. On October 6, 2017, given the obvious severity of Mr. Young's condition and that it was obviously deteriorating, Plaintiff again called the Parchman prison medical department. She again informed the medical staff that her son was desperately ill, in great pain and needed immediate medical attention. Because his condition involved severe abdominal pain, Plaintiff informed the prison medical staff that Mr. Young had previously been stabbed in the stomach and had undergone major surgery as a result. She informed the prison medical staff that he had experienced a bowel blockage with symptoms quite similar to those he was presently experiencing.

24. The medical staff was already aware, before the events noted herein, that Mr. Young had a history of bleeding stomach ulcers and that he had previously had abdominal surgery, and they were aware that such situations significantly increased the danger to Mr.

9

Young's life and health presented by such symptoms as he was experiencing. Plaintiff again requested that the medical staff call her to let her know her son's condition. No one from MDOC called her back. The Defendant medical staff, including Dr. Santos and nurses, decided not to treat or evaluate Mr. Young and to have Mr. Young continue to suffer and very likely die without medical evaluation, diagnosis or intervention, understanding that Mr. Young was in great pain, that he desperately needed medical attention, and that his life and health were in great danger.

25. On October 6, 2017, a Defendant guard[s] decided to forward Mr. Young's October 5, 2017, written request for urgent and immediate medical attention to the medical staff, and did so.

26. On October 6, 2017, the Defendant medical staff, including Dr. Santos and nurses, decided to not respond or react to the written request for urgent and immediate medical attention and the information provided and repeated pleas by Mr. Young's mother, despite their understanding that Mr. Young was in considerable pain and that his life and health were in considerable danger, so that he would continue to suffer as a result of that decision.

27. On October 7, 2017, a couple of Mississippi State Prison inmates called Plaintiff and urged her to call the Parchman prison medical department again, as Mr. Young's condition was worsening and the prison staff had still not responded to their collective pleas for medical help on his behalf. Plaintiff immediately called the prison. She was connected to the Tower officer. She again begged the prison authorities to provide her son with medical care. That guard stated only that he would "check it out." Plaintiff did not receive a return call or any information about her son's situation.

28. Finally, on October 7, 2017, at about 1:17 p.m., after Defendant guards and Defendant medical staff deliberately, maliciously, callously and wantonly ignored his and others' numerous pleas for and his obvious desperate need for immediate medical assistance, as noted herein, Mr. Young was finally taken to the prison medical clinic. At no time thereafter, until his agonizingly painful death at about 8:25 am on October 9, 2017, did the medical staff Defendants attempt any diagnosis or treatment of the patently life-threatening and extremely painful condition from which he suffered, including but not limited to pain relief. It was quickly and immediately apparent to the medical staff that Mr. Young would almost certainly die in prolonged agony if the medical staff did not immediately undertake to diagnose and treat him for the obvious internal injuries and bleeding from which he suffered. Defendants, including Dr. Santos and nurses, decided to allow Mr. Young to suffer and die without attempting to diagnose, evaluate or treat him.

29. During her efforts to obtain medical treatment for Mr. Young from the Defendant medical staff, Plaintiff had informed the Defendant guards that he had been throwing up blood. Mr. Young quickly informed the medical staff on October 7, 2017, immediately but, according to Defendants' records, no later than a few hours after first being taken to the prison clinic, that he had been throwing up and "coughing up" clotted blood for three days, according to the medical staff's notes. According to those notes, once he was in the prison hospital he quickly began repeatedly to throw up clotted blood, no later than by 4:30 pm. He continued to vomit clotted blood, sometimes large amounts, on numerous occasions throughout the remainder of his life. Defendant medical staff were aware that this unmistakable symptom of internal bleeding showed that Mr. Young was in great danger of dying in a short time. Due to their deliberate indifference

11

to Mr. Young's life and health, and their malicious, wanton intent, the medical staff, including Dr. Santos, made no effort whatsoever to diagnose, evaluate or treat the Mr. Young's patently and immediately life-threatening medical condition.

30. On several occasions between 4:30 p.m. on October 7, 2017 and 8:25 a.m. on October 9, 2017, when he died, Mr. Young vomited large amounts of green emesis. This was a clear symptom of a blocked digestive system, which was recognized and understood by the medical staff.

31. Defendants were aware that Mr. Young was in constant pain and discomfort throughout the period of time detailed herein. He repeatedly expressed as much, according to their records, and the numerous instances of vomiting blood and bile which are recorded in their records demonstrate their awareness.

32. Mr. Young remained in acute pain as his medical condition clearly deteriorated even further after he was taken to the prison hospital. Medical staff observed and reported a continuation and worsening of his symptoms. These symptoms from the outset included an extremely rapid pulse and high blood pressure. He quickly developed a 103 degree fever. Medical staff decided to not provide any pain relief medication to Mr. Young despite his obvious severe pain.

33. Mr. Young reported that his last intake of food or water and his last bowel movement had been on October 4, 2017. The medical staff decided to withhold even intravenous nutrition from Mr. Young, except for water, ensuring that his weakness and discomfort would increase, and increasing the already great likelihood that he would die without even an attempt at diagnosis, much less treatment. The medical staff understood this situation and nevertheless

decided to proceed in that manner, so as to increase the suffering and likelihood of death.

34. On October 8, 2017, in spite of his severe condition and reported lack of bowel movement, no orders were issued by Dr. Santos. Mr. Young remained in the clinic for almost two (2) days without a thorough examination or any attempt of a diagnosis by a medical doctor, and without receiving any scans, x-rays, blood tests or an MRI of his abdomen.

35. Early on the morning of October 9, 2017, according to Defendants' records, Mr. Young was found on the floor, bleeding because his IV tubes had been torn out, lying amidst a large amount of green vomit, incoherent and gasping for breath. Defendants decided to wait for almost two and one half hours to do anything in response to his apparent near-death condition. At that point, at about 6:50 a.m., Defendant Santos, having made no effort to diagnose or treat Mr. Young, decided to transfer him to a hospital. Defendant Santos delayed calling for an ambulance for that purpose, so that the ambulance did not arrive until after 8:00 a.m. Mr. Young died in writhing agony while he was being moved to the ambulance, at about 8:20 am.

36. Mr. Young was in his cell for several days, repeatedly requesting medical attention. He suffered from severe stomach pains, vomiting, diarrhea, and light headiness among other things. Mr. Young and Jamarcus Glover repeatedly and consistently begged correctional officers and medical staff present for medical attention. Mr. Young was denied any help whatsoever. Every medical staff that came through were notified of Mr. Young's condition.

37. Not only did Mr. Young and his cell mate and associates plead repeatedly for medical help/treatment, so did Plaintiff. Plaintiff was informed by a fellow inmate that Mr. Young was ill and called the Mississippi State Penitentiary numerous times. Plaintiff called

13

and begged for someone to check on her Son and to get him the medical treatment he desperately needed and deserved, and was constitutionally required to receive. On one such telephone call, Plaintiff was told to tell Mr. Young to "fall out in the floor" in order to receive medical treatment.

### IV. CAUSES OF ACTION

#### A. Count I

38. Paragraph 1-37 above are incorporated herein by reference and made this Paragraph 38.

39. While in the Mississippi State Penitentiary, Mr. Young had a serious medical need that was obvious and known to Defendants. Defendants were aware of the substantial risk of serious harm to Mr. Young if reasonable steps were not taken to abate that risk. Defendants failed to provide reasonable and required care of treatment for Mr. Young. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and indicative of their deliberate disregard and indifference to Mr. Young's serious, critical medical needs and his life, as well as his constitutional rights noted herein and the great danger to his life caused by such conduct. As a result of the foregoing, Mr. Young, due to Defendants' deliberate indifference to whether he lived or died, their intentional infliction of great pain and suffering, their deliberate, wanton malicious and intentional actions preventing and withholding medical aid, was subjected to significant pain and suffering, cruel and unusual punishment and was ultimately deprived of his life without due process of law and in violation of the Eighth, Tenth and Fourteenth Amendments of the U.S. Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

**B.  Count II**

40. Paragraphs 1-39 above are incorporated herein by reference and made this Paragraph 40.

41. By virtue of the foregoing, all Defendants were negligent, grossly negligent, and their actions constituted a deliberate indifference to Mr. Young's serious medical needs.

42. As a result of the foregoing, Mr. Young, through Defendants' deliberate indifference and grossly negligent and intentional, malicious, wanton conduct, was subjected to deliberate indifference and grossly negligent conduct, was subjected to significant pain and suffering, cruel and unusual punishment and ultimately deprived him of his life without due process of law in violation the Fourth, Eighth, Tenth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. Sections 1985 and 1986, 42 U.S.C. 1983, along with attorneys' fees and cost pursuant to 42 U.S.C., Section 1988.

**C.  Count III**

43. Paragraphs 1-42 above are incorporated herein by reference and made this Paragraph 43.

44. Defendants' treatment of Mr. Young far exceeded beyond the bounds of human decency and shock the conscience, all in violation of his Constitutional rights.

**D.  Count IV**

45. Paragraphs 1-44 above are incorporated herein by reference and made this Paragraph 45.

46. Defendants failed to follow MDOC policies and protocol. Defendants in

their individual capacity had a duty to train and supervise. Defendants' deliberate indifference make them liable for the actions and inactions of their employees in their blatant disregard for Mr. Young's constitutional rights. Due to the violation of Mr. Young's constitutional rights by Defendants, Plaintiff suffered general and special damages and is entitled to relief under 42 U.S.C. Section 1983 along with attorneys' fees and costs pursuant to U.S.C. Section 1988 and any other relief under the law.

### E. Count V

47. Paragraphs 1-46 above are incorporated herein by reference and made this Paragraph 47.

48. Mr. Young, while housed in Parchman, lived in a grossly unsanitary living condition and was deprived of means to maintain his most basic personal hygiene. He complained of filthy, horrible conditions. There were no cleaning supplies. Rats, roaches, insects and the like were everywhere and over the meal trays. The toilet leaked, it rained inside the cells causing black mold and mildew. The wiring was inadequate and some lights did not work. Mr. Young suffered days of lock down at no fault of his own. Not only was Mr. Young deprived of his life, he was subjected to the grossly inhumane and dangerous conditions of confinement, all in violation of his rights under the Eighth and Fourteenth Amendments to the United State Constitution. Defendants were aware of the deplorable housing and living situations and with deliberate indifference, and wanton and malicious intent, allowed the conditions to exist and worsen.

## V. DAMAGES

49. Paragraphs 1-48 above are incorporated herein by reference and made this Paragraph 49.

50. Michael Young's death was unnecessary and preventable. His Mother, Heirs and Estate are entitled to recover the income and earnings he would have enjoyed had he lived. Mr. Young also experienced unfathomable mental and physical pain and suffering before his death as a direct result of Defendants' conduct, for which his Mother, Heirs, and Estate are entitled to recover damages. Finally, Defendants' violations of Mr. Young's constitutional rights were cruel, malicious, willful and evidenced a reckless disregard and deliberate indifference for his life and those rights, entitling Plaintiff to recover compensatory damages from Defendants, as well as punitive damages in order to deter such conduct in the future.

## VI. RIGHT TO AMEND

51. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff reserves the right to name additional Defendants should later facts establish that others are liable herein and when full names of Defendants are uncovered.

**WHEREFORE, PREMISES, CONSIDERED,** Plaintiff prays that upon a final trial hereof she be entitled to take, have and recover, of and from said Defendants attorney fees, damages, including actual, economic, non-economic, compensatory, exemplary, punitive, pre-judgment interest, post-judgment interest, costs of Court, and for such other and further relief to which they may show she may be justly entitled.

...
...

Respectfully submitted, this the 12th day of April, 2021.

BY: _____
LYNNE CHRISTOPHER, 9268

**WYOMA IVY, PLAINTIFF**

**CERTIFICATE OF SERVICE**

I, Lynne Christopher, hereby certify that I electronically filed the foregoing Plaintiffs' First Amended Complaint with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record, as follows:

| | |
|---|---|
| Chad Williams | chad.williams@ago.ms.gov |
| Michael Bentley | mbentley@bradley.com |
| Erin Saltaformaggio | esaltaformaggio@bradley.com |
| Molly Walker | mmwalker@bradley.com |
| Michael Williams | mcwilliams@bradley.com |

This, the 12th day of April, 2021.

**Lynne Christopher #9268**
christopher.lynne@yahoo.com